Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5960 | **DATE** | 8/8/2000 |
| **CASE TITLE** | FOGLE et al vs. WILLIAM CHEVROLET et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☒ Status hearing set for 24 AUG 00 at 10:00 am.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant William Chevrolet's motion for summary judgment on the green car is granted as to Count III and V and is denied as to Count II. Count III is dismissed in its entirety. Count V is dismissed only to the extent it relates to the transaction surrounding the green car. Count VI is dismissed with prejudice. Plaintiffs' motions for summary judgment are denied. Plaintiffs' motion to strike affidavits and Williams Chevrolet's response brief is denied. On the court's own motion, summary judgment is entered in favor of defendant William Chevrolet on Count II as it relates to the gray car. Plaintiff's action to recover for violations if TILA on the grey car in Count II is dismissed with prejudice. All other pending motions are moot.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 0 9 2000 date docketed | | 63 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | | | |
| | Copy to judge/magistrate judge. | 00 AUG -9 AM 8:01 | 8/8/2000 date mailed notice | | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS7 mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIRGINIA FOGLE and FATINA FOGLE, )
)
Plaintiffs, )
)
v. ) No. 99 C 5960
)
WILLIAM CHEVROLET/GEO, Inc. and )
BANK ONE WISCONSIN, )
)
Defendants. )
)

**DOCKETED**
**AUG 0 9 2000**

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiffs Virginia Fogle and Fatina Fogle ("plaintiffs") filed an amended complaint against defendants William Chevrolet/Geo, Inc. ("William Chevrolet") and Bank One Wisconsin ("Bank One"), arising out plaintiffs purchase of a new grey 1999 Kia Sephia ("grey car") and a new green 1999 Kia Sephia ("green car"). Plaintiffs allege violations of the Federal Odometer Act ("FDO"), 49 U.S.C. § 32705(a) (Count I), the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1602 et seq. (Count II), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 et seq. (Count III), the Illinois Odometer Act ("IOA"), 625 ILCS 5/3-112.1 (Count IV), fraud under Illinois law (Count V), and the Credit Services Organizations Act ("CSOA"), 815 ILCS 605/1 (Count VI). Plaintiffs and William Chevrolet has each moved for summary judgment pursuant to

1

Federal Rule of Civil Procedure 56 on Count VI.[1] Plaintiffs have moved for summary judgment on Count II as it relates to both cars. Defendant has moved for summary judgment each count that relates to the green car, Counts II, III, and V. Plaintiffs have also filed a motion to strike the affidavits of Tim Dillon ("Dillon") and Joe Jozefiak ("Jozefiak") as well as William Chevrolet's response brief to plaintiffs' motions for summary judgment. For the reasons set forth in this memorandum opinion and order, defendant William Chevrolet's motion for summary judgment on Count VI is GRANTED. William Chevrolet's motion for summary judgment on each count that relates to the green car is GRANTED in part and DENIED in part as specified herein. Plaintiffs' motions for summary judgment are DENIED. Plaintiffs' motion to strike affidavits and William Chevrolet's response brief is DENIED. On this Court's own motion, summary judgment is entered on behalf of defendant William Chevrolet for Count II as it relates to the grey car.

## STATEMENT OF FACTS[2]

On June 28, 1999, plaintiffs went to defendant William Chevrolet to purchase new automobiles. Plaintiffs ultimately purchased the grey car and the green car. As part of the sale of the grey car, William Chevrolet prepared a retail installment contract ("contract") and a financing rider ("rider"). Plaintiffs signed both the contract and rider and were given a copy of the contract.

---

[1] Defendant William Chevrolet originally filed a motion to dismiss Count VI, which this court provided notice to the parties of its intent to convert the motion to one for summary judgment since plaintiffs had already filed a motion for summary judgment on Count VI. The parties were allowed additional time to file material in connection with the converted summary judgment motion.

[2] The following statement of facts comes from parties' Local Rule 12(M) statement of material facts and accompanying exhibits. On September 1, 1999, the Northern District of Illinois implemented the new local rules which now reference the statements as Local Rule 56.1(a)(3) and 56.1(b)(3).

2

Pursuant to the terms of the contract and rider, if William Chevrolet was unable to assign the contract within 3 days of the date of the contract, the contract became null and void. As set forth in the contract, plaintiffs' annual percentage rate would be 9.90% with monthly payments at $268.57.

At some point thereafter, the exact date which is in dispute but is not material, plaintiffs also signed a second retail installment contract ("second contract") on the grey car. As set forth in the second contract, plaintiffs' annual percentage rate would be 12.2% with monthly payments of $284.69. Plaintiffs do not recall seeing or signing this second contract. William Chevrolet argues, on the other hand, that the initial financing terms in the first contract could not be obtained. Thus, William Chevrolet claims plaintiffs returned to William Chevrolet and signed the second contract. William Chevrolet arranged for financing for plaintiffs through defendant Bank One on the second contract for the grey car. Plaintiffs left William Chevrolet with possession of the grey car. Plaintiffs remain in possession of the grey car and continue to make monthly payments in the amount of $284.69.

Also, on June 28, 1999, plaintiffs purchased the green car. As part of the sale of the green car, William Chevrolet allegedly presented plaintiffs with two blank retail installment contracts. Plaintiffs asserts that they signed both the contracts in blank and only later learned the different terms to the contracts. William Chevrolet claims that plaintiffs signed the completed contracts, the first contract they signed on June 28, 1999. William Chevrolet asserts that because financing could not be obtained on the first contract, plaintiffs returned and signed the second contract.

Pursuant to the terms of one of the contracts, plaintiffs' annual percentage rate would be 10.99% with monthly payments at $296.33. As set forth in the second contract, plaintiffs' annual percentage rate would also be 10.99% with monthly payments of $328.97. The difference between

3

the two contracts was an addition to the second contract for a service contract in the amount of $1495.00, thereby accounting for the difference in monthly payments. William Chevrolet arranged for financing for plaintiffs through GMAC on the second contract for the green car. Plaintiffs left William Chevrolet with possession of the green car.

Two days later, on June 30, 1999, plaintiffs returned to William Chevrolet to complain about how the transaction was handled. On that date, plaintiffs were allegedly given, for the first time, a copy of the credit disclosures for the green car. On July 6, 1999, plaintiffs returned the green car to William Chevrolet, advising them that they were canceling and rescinding the transaction.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511.

4

## DISCUSSION

### I. Plaintiffs' Motion to Strike

Plaintiffs seek to strike the affidavits of Dillon and Jozefiak in their entireties or, in the alternative, in part. Plaintiffs claim that the affidavits were made in bad faith and in violation of Rule 56(g) of the Federal Rules of Evidence in that the affiants have established a pattern of lying under oath to the court. Plaintiffs also seek to strike William Chevrolet's response briefs to plaintiffs' motions for summary judgment as they relate to the affidavits that plaintiffs claim should be stricken. Plaintiffs' motion to strike is denied. The court believes the affiants had personal knowledge of the statements in their affidavit. Moreover, to the extent plaintiffs disagree with the averments or believe that the affiants made a prior inconsistent statement goes to the weight and credibility of the evidence, not its admissibility. Accordingly, plaintiffs' motion to strike is DENIED.

### II. Violation of TILA--Count II

Plaintiffs move for summary judgment on Count II, claiming that William Chevrolet violated TILA as a matter of law with respect to both car transactions. Plaintiffs first argue that William Chevrolet violated TILA as it relates to the grey car by failing to comply with TILA and Regulation Z. Plaintiffs also argue that William Chevrolet violated TILA as it relates to the green car by failing to make proper disclosures. William Chevrolet argues that a genuine issue of material fact exists with respect to the transaction of the grey car. On the other hand, William Chevrolet asserts that it is entitled to summary judgment with respect to the green car transaction because the transaction was rescinded and thereby plaintiffs suffered no actual injury as is required under TILA.

The essential purpose of TILA is to promote the informed use of credit by assuring a

meaningful disclosure of credit terms to consumers. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559, 100 S.Ct. 790, 794 (1980). Thus, TILA requires all retail installment contracts to provide accurate disclosures of credit terms. Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir. 1997). Congress has delegated expansive authority to the Federal Reserve Board ("FRB") to "elaborate and expand the legal framework governing commerce in credit." Id. Pursuant to that authority, the FRB issued the set of regulations known as Regulation Z which require certain mandatory disclosures on a written disclosure form. Smith v. Cash Store Management, Inc., 195 F.3d 325, 326-27 (7th Cir. 1999). The FRB's interpretations of its own regulations and Official Staff Commentary are given great deference by courts and are dispositive unless clearly irrational. Ford Motor Credit Co., 444 U.S. at 565-66.

### A. Transaction Surrounding the Grey Car

Plaintiffs argue that William Chevrolet violated TILA because, even though William Chevrolet disclosed an annual percentage rate of 9.90% on the grey car transaction, they were later "saddled" with an annual percentage rate of 12.2%. Plaintiffs' argument lacks merit as the Seventh Circuit ruled on this very issue three days after plaintiffs filed their summary judgment motion in Janikowski v. Lynch Ford, Inc., 210 F.3d 765 (7th Cir. 2000). In Janikowski, the Seventh Circuit held that a car dealership does not violate TILA if they accurately disclose the mandatory disclosures for which the consumer is legally obligated before the consummation of a contract. Id. at 767-68. Thus, when a consumer, who cancels one contract and then enters into a new contract, has been given accurate TILA disclosures, the car dealership does not violate TILA. Id.

Here, the undisputed facts establish that plaintiffs went to William Chevrolet to purchase a new car. After deciding on which car to purchase, the grey car, plaintiffs were informed that their

6

annual percentage rate would be 9.90%. Unable to obtain financing for plaintiffs at 9.90%, even though at that time plaintiffs were not legally obligated to purchase the grey car at any other rate but the 9.90%, plaintiffs nonetheless signed a new retail installment contract agreeing to purchase the grey car at an annual percentage rate of 12.2%.

Plaintiffs do not dispute that they signed both contracts or that both contracts contained accurate TILA disclosures. Instead, plaintiffs argue that Janikowski is inopposite because the buyer, in Janikowski, was informed that financing was rejected as to the first contract before she executed the second contract. Yet, here in this case, the fact remains undisputed that plaintiffs signed the second contract, even though plaintiffs asserts that they do not remember signing or seeing the second contract. Moreover, plaintiffs do not even assert that they were asked to sign the second contract in blank. The fact that plaintiffs do not recall the events surrounding the signing of the second contract is insignificant, considering the fact that plaintiffs do not dispute they signed the second contract. More importantly, plaintiffs do not even dispute that William Chevrolet accurately set forth the mandatory TILA disclosures in both contracts.

Thus, regardless of these immaterial factual disputes, plaintiffs' claim still legally fails because William Chevrolet accurately set forth the mandatory TILA disclosures prior to the consummation of both contracts. Therefore, as a matter of law, William Chevrolet did not violate TILA because it is undisputed that it accurately disclosed plaintiffs' legal obligations under both contracts. Accordingly, plaintiffs' motion for summary judgment on Count II as it relates to the grey car is DENIED.

While William Chevrolet did not move for summary judgment on Count II as it relates to the

grey car,[3] this court finds it appropriate to enter summary judgment on behalf of William Chevrolet. As the Seventh Circuit has reluctantly stated, a judge may consider granting summary judgment sua sponte when there is no genuine issue of material fact, the non-moving party is entitled to judgment as a matter of law, and the non-moving party would not be taken by surprise. Goldstein v. Fidelity & Guar. Ins. Underwriters, 86 F.3d 749, 750-51 (7th Cir. 1996). First of all, the material facts of this case are undisputed. Second, the question of whether a car dealership violates TILA when it properly discloses the mandatory disclosures for which the consumer is legally obligated before the consummation of two separate contracts has already been decided. See Janikowski v. Lynch Ford, Inc., 210 F.3d 765 (7th Cir. 2000). Moreover, as this court noted, it is clear that, based on the undisputed material facts, William Chevrolet accurately made the mandatory TILA disclosures for which plaintiffs were legally obligated before consummations of the contracts, and thus, no genuine issue of material fact exists. Finally, because plaintiffs have moved for summary judgment on this claim, both parties were on notice that this court was considering summary judgment. Accordingly, on its own motion, this court must grant summary judgment on behalf of defendant William Chevrolet for Count II as it relates to the grey car. Plaintiffs' action to recover for violations of TILA on the grey car in Count II is dismissed with prejudice.

B. Transaction Surrounding the Green Car

Plaintiffs argue that William Chevrolet violated § 1638(a) of TILA in three ways. Plaintiffs claim they are entitled to summary judgment on Count II with respect to the green car because as

---

[3] William Chevrolet contends throughout there response briefs that it did not violate TILA as a matter of law, but does not move for summary judgment on this claim. This court is unsure why a motion for summary judgment was not filed by William Chevrolet on the grey car claim.

8

a matter of law William Chevrolet violated TILA. Plaintiffs first argue that William Chevrolet violated TILA when it allowed plaintiffs to sign the retail installment contracts in blank and without the proper TILA disclosures. Plaintiffs also argue that William Chevrolet violated TILA by failing to give plaintiffs a copy of either retail installment contract on the date the transaction was consummated as required by TILA. Finally, plaintiffs argue that William Chevrolet violated TILA when it made false credit disclosures to plaintiffs.

In this case, plaintiffs allege that a credit sale between themselves and William Chevrolet consummated under TILA on June 28, 1999, the date they took possession of the green car and became contractually obligated. On that date, plaintiffs signed a contract, with the attached rider, which disclosed that they would be provided credit in the amount of $13,570.25. William Chevrolet contends, however, that there was in fact no consummation because plaintiffs ultimately rescinded the contract that was purportedly assigned to GMAC and never made a payment on the car.

Regulation Z specifies that consummation occurs at the time that a consumer becomes contractually obligated on a credit transaction. 12 C.F.R. § 226.2(13). Here, plaintiffs became contractually obligated on the credit transaction when they signed each of the retail installment contract, subject to financing. Thus, because plaintiffs became contractually obligated, still subject to financing, on the transaction when they signed the paperwork and took possession of the green car, the court finds consummation occurred on June 28, 1999, the respective date of both contracts on the green car. So, William Chevrolet had an obligation to make its TILA disclosures before plaintiffs signed the contracts on June 28, 1999. 12 C.F.R. § 226.17(b).

The fact that the entire transaction was later voided does not affect the need for accurate disclosures.

The court must now turn to whether William Chevrolet made accurate TILA disclosures prior

to or at the time of consummation. Plaintiffs provide sufficient evidence that William Chevrolet did not because plaintiffs were asked to sign the contracts in blank. On the other hand, William Chevrolet adamantly deny that the contracts were signed in blank and also provide sufficient evidence that the contracts were not signed in blank. Thus, there is an obvious genuine issue of material fact in dispute between the parties, namely whether William Chevrolet accurately set forth the mandatory TILA disclosures at the time of consummation, prior to or at the signing of the contracts. If the contracts were signed in blank, then William Chevrolet may have violated TILA. Therefore, based on the evidence before the court, both plaintiffs and William Chevrolet have presented sufficient evidence to survive summary judgment and this matter must proceed to trial. Consequently, plaintiffs and William Chevrolet's motion for summary judgment on Count II as it relates to the green car are DENIED.[4]

III. Count III: Illinois Consumer Fraud Act

Plaintiffs assert in Count III that William Chevrolet also violated ICFA. William Chevrolet moves to dismiss Count III as it relates to the green car, claiming that plaintiffs suffered no actual damages and has failed to prove they suffered any actual damages. To prove a violation of the ICFA, plaintiffs must show that, when William Chevrolet engaged in the alleged deceptive act or practice, it proximately caused actual damage. 815 ILCS 505/10a(a); B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 970-71 (7th Cir. 1999) (citing Siegel v. Levy Org. Dev. Co., 153 Ill.2d 534, 542, 607 N.E.2d 194, 198 (Ill. 1992)). Plaintiffs do not dispute that they must show actual

---

[4] William Chevrolet also argued in its initial brief that plaintiffs must establish actual damages in order to recover for the alleged violations of TILA. William Chevrolet abandons this argument in subsequent filings. Therefore, this court need not address the issue.

10

damages in relation to the ICFA claim, but instead argues that they suffered emotional distress and humiliation over William Chevrolet's conduct.

While a plaintiff can recover for intangible actual damages resulting from mental suffering, such as aggravation and inconvenience, under the ICFA, Roche v. Fireside Chrysler-Plymouth, Mazda, Inc., 235 Ill.App.3d 70, 86, 600 N.E.2d 1218, 1228 (1992), here, plaintiffs have not presented a shred of evidence to establish a genuine issue of material fact on damages such that a trial is required. Instead, plaintiffs merely allege in their amended complaint that they suffered emotional distress and humiliation over William Chevrolet's conduct. Plaintiffs, however, may not rest on their pleadings because they bear the burden of proof on this particular issue. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Instead, plaintiffs must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Id. Plaintiffs have failed to do so. In fact, there is nothing in the record to even raise a reasonable inference that plaintiffs suffered actual damages in this case. Therefore, without a showing that plaintiffs suffered actual damages based on William Chevrolet's conduct as it relates to the green car, summary judgment in favor of William Chevrolet is warranted.

In addition, a "defendant's compliance with the disclosure requirements of [TILA] is a defense to liability under the [ICFA]." Lanier v. Associates Finance, Inc., 114 Ill.2d 1, 18, 499 N.E.2d 440, 447 (1986). Thus, because this court found William Chevrolet's conduct in relation to the grey car comported with the TILA, plaintiffs' ICFA claim on the grey car transaction must also be dismissed. Accordingly, defendant William Chevrolet's motion for summary judgment as to Count III is GRANTED. Count III is dismissed in its entirety.

## IV. Count V: Illinois Common Law Fraud Claim

In Count V, plaintiffs assert that William Chevrolet committed fraud in relation to its conduct surrounding both the green car and grey car transactions. William Chevrolet moves for summary judgment on Count V as it relates to the green car, claiming that plaintiffs suffered no actual damages and has failed to prove they suffered any actual damages. Plaintiffs do not dispute that they must show actual damages in relation to the fraud claim, but again argues that they suffered emotional distress and humiliation over William Chevrolet's conduct. As noted above, however, plaintiffs have not presented a shred of evidence to establish a genuine issue of material fact on damages such that a trial is required.

Moreover, without a binding agreement, a plaintiff is only entitled to recover out-of-pocket losses attributable to the misrepresentations. Roboserv, Inc. v. Kato Kazaku Co., Ltd., 78 F.3d 266, 274 (7th Cir. 1996). In this case, since plaintiffs assert there is no binding agreement, plaintiffs would only be entitled to recover out-of-pocket losses attributable to William Chevrolet's alleged misrepresentations. "Damages for common law fraud are not intended to restore what one never had." Id. Plaintiffs have not shown that it incurred any out-of-pocket losses in relation to William Chevrolet's alleged misrepresentations surrounding the green car. Plaintiffs returned the green car and rescinded the contract. Plaintiffs have never been required to pay anything in relation to the contract. Therefore, without a showing that plaintiffs suffered actual damages based on William Chevrolet's conduct as it relates to the green car, summary judgment in favor of William Chevrolet is warranted. Accordingly, William Chevrolet's motion for summary judgment on Count V as it relates to the green car is GRANTED.

## IV. Count VI: Credit Services Organization Act

In Count VI of their amended complaint, plaintiffs allege that William Chevrolet violated the Credit Services Organization Act ("CSOA"), 815 ILCS 605/1 et seq. in a variety of ways. William Chevrolet argues that the CSOA does not apply to car dealerships, and thereby, it cannot be held liable for the alleged violations. On the other hand, plaintiffs argue that the CSOA applies to car dealerships, and thus, William Chevrolet failed to comply with its requirements as a matter of law. Each party moves for summary judgment on the issue.

A federal court applying state law should attempt to resolve the issue before it as if were the highest court of the state that provides the state law. Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 416-17 (7th Cir. 1997); Allen v. Transamerica Ins. Co., 128 F.3d 462, 466 (7th Cir. 1997). Thus, this court must attempt to predict how the Illinois Supreme Court would decide the issue before the court. Id. (citing Smith v. Equitable Life Assurance Soc'y, 67 F.3d 611, 615 (7th Cir. 1995)). If an Illinois Appellate Court has ruled on the issue, that decision may control, "unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." Id. Thus, decisions by the intermediate state appellate courts are not necessarily authoritative or binding in federal court. Knoblauch v. DEF Express Corp., 86 F.3d 684, 687 (7th Cir. 1997) (citing Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783 (1967)).

The Illinois Supreme Court has not provided clear guidance on the issue of whether the CSOA is applicable to car dealerships such as William Chevrolet. While the Illinois Supreme Court has yet to provided guidance, the Illinois Supreme Court will soon provide some guidance as it recently granted leave to appeal the decision of the Illinois Appellate Court, Third District, in Midstate Siding & Window Co., Inc. v. Rogers, 309 Ill.App.3d 610, 722 N.E.2d 1156 (Ill. App. Ct.

13

1999). Midstate Siding Window Co., Inc. v. Rogers, 189 Ill.2d 661, --- N.E.2d --- (Ill. 2000). Therefore, this court must exercise its best judgment to determine how the Illinois Supreme Court will rule on this issue. The appropriate starting point is with the statute itself, applying the same rules of statutory construction as the Illinois Supreme Court would, United States Fire Ins. Co. v. barker Car Rental, 132 F.3d 1153, 1156 (7th Cir. 1997) (applying Illinois law), in conjunction with the recently appealed decision from the Illinois Appellate Court in Midstate.

A court must, first and foremost, ascertain and give effect to the intention of the legislature in enacting the statute. United States Fire Ins. Co., 132 F.3d at 1156 (citing Abrahamson v. Illinois Dep't of Prof'l Regulation, 153 Ill.2d 76, 606 N.E.2d 1111, 1118 (1992)). In resolving the intention of the legislature in enacting the statute, a court should defer to the language of the statute, giving the statutory terms their ordinary meaning, as it is usually the best indication of legislative intent. Id. In addition, the court should "evaluate the statute as a whole and construe each provision in context with every other section." Id. at 1157. If the statutory language is clear and unambiguous, the court must merely enforce the law as enacted. Id. at 1156-57. If, on the other hand, the language is ambiguous, a court may look behind the language used and consider the purpose of the statute and evils intended to protect against. Id. (citing In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989, 167 Ill.2d 161, 215, 656 N.E.2d 1049, 1053 (1995)).

The CSOA mandates to protect consumers or buyers from unscrupulous activity on the part of a credit service organization. 815 ILCS 605/2. In fact, a credit service organization must maintain various records in connection with transactions with consumers and buyers and is also prohibited from engaging in various unscrupulous acts. Id. 605/5-10. Failure to abide by the strictures of the CSOA may warrant recovery by the consumer for actual damages or can even result

14

in criminal charges. Id. 605/11-14. A buyer is "an individual who is solicited to purchase or who purchases the services of credit service organization." Id. 605/3(a). A "credit services organization" is defined under the CSOA as follows:

> a person who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides, or represents that the person can or will provide, any of the following services:
> (i) improving a buyer's credit record, history, or rating:
> (ii) obtaining an extension of credit for a buyer; or
> (iii) providing advice or assistance to a buyer with regard to either subsection (i) or (ii).

815 ILCS 605/3(d).

Here, plaintiffs argue that William Chevrolet is a credit service organization by virtue of it agreeing to help them obtain financing for their automobile purchases. Although such a reading of the CSOA is plausible, it is not consistent with the stated statutory purpose. Reynolds Metals Co. v. Illinois Pollution Control Bd., 108 Ill.App.3d 156, 438 N.E.2d 1263, 1267 (1982) (where different interpretations of statute are possible, a court must interpret statute to be consistent with its purpose). The purpose of the CSOA is stated in the section two of the Act which states "the purpose is to provide prospective consumers of credit services companies with the information necessary to make an informed decision regarding the purchase of those services and to protect the public from unfair or deceptive advertising and business practices." 815 ILCS 605/2(a). In addition, the legislature inconspicuously states the intent behind enacting the CSOA as:

> The ability to obtain and use credit has become of great importance to consumers who have a vital interest in establishing and maintaining their credit worthiness and credit standing. As a result, consumers who have experienced credit problems may seek assistance from credit service businesses which offer to improve the credit standing of such consumers. Certain advertising and business practices of some companies engaged in the business of credit services have worked a financial hardship upon the people of this State, often on those who are of limited economic means and inexperienced in credit matters.

15

Id. 605/2(b). A reading of this section of the CSOA establishes that car dealerships were not meant to be covered under the Act as a credit service organization. Credit service organizations are business who offer to improve the credit standing of consumers. Id. Car dealerships are not engaged in the business of offering to improve the credit standing of consumers, they are merely in the business of selling automobiles. While it is true car dealerships assist consumers in obtaining credit for their purchase, car dealerships do not assist consumers in improving the consumer's credit standings. Moreover, car dealerships are not sought out for assistance in obtaining credit or improving credit.

The court in Midstate failed to take into account the stated statutory intent and purpose in coming to its conclusion that retailers who assist consumers in obtaining credit is a credit services organization. Moreover, the court failed to take into account the broad impact of its decision that retailers are included under the purview of the Act merely because it believed that the factual situation of that case compelled application to retailers. Therefore, this court finds that the court in Midstate gave too much weight to policy considerations rather than effectuating the plain language of the Act. As noted by the dissent in Midstate, based on the unequivocal declaration by the legislature on the general purpose of the Act, the Act should not apply to retailers based on pure policy considerations. Midstate, 309 Ill. App. 3d at 615, 722 N.E.2d at 1160. Instead, "the intent of the Act was to regulate businesses that advertise to consumers as providing credit services and those that are engaged primarily in business of credit services, not business offering such services only as an adjunct to their own retail sales. Id.

Therefore, this court believes that the Illinois Supreme Court would hold that, as a matter of law, a car dealership is not a credit service organization intended to be covered under the purview

16

of this Act. Accordingly, defendant William Chevrolet's motion for summary judgment on Count VI must be GRANTED. Plaintiffs' motion for summary judgment on Count VI is DENIED. Count VI is dismissed with prejudice.

## CONCLUSION

For the above stated reasons, defendant William Chevrolet's motion for summary judgment on each count that relates to the green car is GRANTED as to Count III and V and DENIED as to Count II. Count III is dismissed in its entirety. Count V is dismissed only to the extent it relates to the transaction surrounding the green car. William Chevrolet's motion for summary judgment on Count VI is GRANTED. Count VI is dismissed with prejudice. Plaintiffs' motions for summary judgment are DENIED. Plaintiffs' motion to strike affidavits and William Chevrolet's response brief is DENIED. On this Court's own motion, summary judgment is entered on behalf of defendant William Chevrolet for Count II as it relates to the grey car. Plaintiffs' action to recover for violations of TILA on the grey car in Count II is dismissed with prejudice. All other pending motions are MOOT. The parties are once again strongly urged to discuss the settlement of this case. The case is set for report on status at 10:00 a.m. on August 24, 2000 where the parties should be prepared to set further dates.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 8, 2000